FILED

2014 Mar-17  AM 08:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENDA E. BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:12-cv-4084-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION[1]

### I.      Introduction

The plaintiff, Brenda E. Banks, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI").  Ms. Banks timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] On April 9, 2013, the parties consented to the exercise of full dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

Ms. Banks was 42 years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a high school education. (Tr. at 32-33). Her past work experiences include employment as a day care worker. (Tr. at 32, 41, 156-63). Ms. Banks claims that she became disabled on July 1, 2007, due to depression. (Tr. at 202). She also alleges that she has mitral valve prolapse, asthma, and migraine headaches. (Tr. at 202).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d

1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the

claimant can do other work, the claimant is not disabled. *Id.*  The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms.  Banks has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of his decision. (Tr. at 23).   He first determined that Ms. Banks has not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. at 25).  According to the ALJ, plaintiff's dysthymic disorder and anxiety disorder are considered "severe" based on the requirements set forth in 20 C.F.R. § 416.920(c), but that her asthma, mitral valve prolapse and migraines are minimal, cause no functional limitation, and are not severe enough to be disabling. (Tr. at 25).  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 25).  The ALJ did not find Ms. Banks's allegations to be credible, and he determined that she has the following residual functional capacity: a full range of work at any exertional level, with no impairment in sitting, standing, walking, lifting, carrying, pushing, or pulling.  (Tr. at 26-27).   He further found

that the claimant is capable of understanding, remembering, and carrying out simple instructions over an 8-hour workday with routine breaks, capable of casual and non-confrontational contacts with coworkers, supervisors, and the general public, and capable of dealing with changes in the workplace introduced slowly. (Tr. at 26-27).

Moving on to the fourth step of the analysis, the ALJ concluded that Ms. Banks is unable to perform her past relevant work as a day-care worker.  (Tr. at 33).   The ALJ considered the testimony of a vocational expert, and employed 20 CFR § 404.965 as a guideline for finding that Ms. Banks is incapable of performing the job of day care worker "either as she actually did it or as it is generally done in the national economy."   (Tr. at 32-33).   He further found, however, that she was able to perform work as a domestic cleaner, linen supply worker, and shipping/receiving clerk, and that jobs exist in a significant number in the state and nation.  (Tr. at 33). The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since February 3, 2009, when she filed her application."  (Tr. at 34).


II.     **Standard of Review**

This Court's role in reviewing claims brought under the Social Security Act

is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Commissioner of Soc. Sec.*, 363 F3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the

decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Banks alleges that the ALJ's decision should be reversed and remanded because the ALJ's decision is not supported by substantial evidence.  (Doc. 11, p. 2). Specifically, she argues that the ALJ failed to properly credit the opinion of the "treating" psychologist appointed by the ALJ, Dr. Sally Gordon (doc. 11, pp. 7-9), and failed to properly assess the severity of claimant's migraine headaches, asthma, and mitral valve prolapse.  (Doc. 11, pp. 9-13).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of

disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## A. Severity of her Mental Conditions

At the request of the Social Security Administration, Ms. Banks underwent a consultative psychological examination performed by Dr. Gordon.  She reported to Dr. Gordon that she had migraine headaches and depression.  She reported that the migraines occur "every two to three months and last for three days" and that her depression began in 1995 because her "parents would fight all the time."   (Tr. at 334).   The claimant also described to Dr. Gordon anxiety, panic attacks, and intermittent agoraphobia, but denied psychotic thoughts, manic symptoms, or suicidal ideation.  (Tr. at 334).  Dr. Gordon diagnosed the claimant with dysthymic disorder, anxiety disorder, panic disorder, and insomnia.[2]  She further noted that the claimant is "capable of getting along with others, although at times she is likely to be withdrawn and to avoid social interactions" and that she is "likely to be easily

---

[2]  Dr. Gordon noted "R/O post-traumatic stress disorder," indicating that symptoms of "PTSD" may have been present, and could not be ruled out, but the doctor had insufficient information to defend a diagnosis for that disorder.

frustrated and have difficulty responding adaptively to mild work pressures on a consistent basis."   The claimant received a "50" as the Global Assessment of Functioning ("GAF") in Dr. Gordon's report.  (Tr. at 336).  The ALJ questioned Dr. Gordon about that score, and was told that the score was subjective, made without a standardized protocol, and was only a "snapshot of an individual at a particular time." (Tr. at 90-91).  Dr. Gordon further testified that the score  must be viewed in context with "the whole of the records."  (Tr. at 91).

The Eleventh Circuit Court of Appeals has noted that the GAF scale is of very limited application to a disability finding in that the score has no "direct correlation to the severity requirements of the mental disorders listing."  Wind v. Barnhart, 133 Fed. Appx. 684, 692 (2005)(in which the claimant's score was 50-55).  See also, Oates v. Astrue, 2009 WL 1154133 *6-7 (S.D. Ala. April 27, 2009)(in which the claimant was given one score as low as 25).   Another court within this district has examined the importance to be placed on a GAF of 50:

> The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM–IV"). A GAF of 41–50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM–IV at 32.  Several courts of appeal have, in unpublished or nonprecedential opinions, considered

the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and of itself determinative of disability. *See Hillman v.Barnhart*, 48 Fed.Appx. 26, 30, n.1 (3d Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); *Rutter v. Comm'r of Soc. Sec.*, 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir.1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); *Roemmick v. Shalala*, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n. 1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); *Seymore v. Apfel*, 131 F.3d 152 (Table), 1997 WL 755386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); *Stalvey v. Apfel*, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir.1999)("The GAF is not an absolute determiner of ability to work."). *But cf. Lloyd v. Barnhart*, 47 Fed. Appx. 135, 135, n.2 (3rd Cir. 2002)(not precedential) (noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

Jones v. Astrue, 494 F. Supp. 2d 1284, 1289 (N.D. Ala. 2007).

In this case, the ALJ noted that Dr. Gordon saw Ms. Banks only once, and was not a treating physician. (Tr. at 28).[3] Dr. Gordon relied on records that were not identified, which she had received from the Alabama Disability Determination Service, and on the claimant's own statements. (Tr. at 30). The ALJ accorded Dr.

---

[3] Plaintiff's reference to Gordon as her "treating psychologist" (doc. 11, p. 7) is wholly unsupported in the record.

Gordon's opinion "some weight," but found that her descriptions of Ms. Banks's limitations were not sufficiently specific.  (Tr. at 31).  The ALJ found that Dr. Gordon's opinion was consistent with, but made more specific by, the opinion of Dr. Samuel D. Williams, which also was given "some weight."  (Tr. at 31).  The ALJ also placed "some weight" on the opinions of the treating doctor, Joshua Miller, who had been the plaintiff's primary care provider for several years, and plaintiff does not assert that the ALJ gave improper weight to Dr. Miller's opinion or any other medical evidence.

After considering the entire record, the ALJ determined that Plaintiff's medically determined mental and physical impairments could reasonably be expected to cause the alleged symptoms, but found her statements regarding the extreme nature of the symptoms were inconsistent with the medical records, which showed that her conditions have generally improved with treatment and do not "show a longitudinal picture of sustained, extreme symptoms, as alleged."  (Tr. at 28).  The ALJ properly considered the evidence that Plaintiff had been treated for depression and anxiety, had complained of insomnia and suicidal ideations, and had migraine headaches and asthma.  The ALJ examined all of the record evidence, along with the consultative examination of Dr. Gordon, and provided a detailed analysis and reasoning for the weight accorded to each.  The Plaintiff has not

pointed to any objective treatment records which indicate that the RFC determination was not correct.   The ALJ simply found that, based upon all the evidence, the conditions are not so debilitating as to render her unable to perform certain work.

Plaintiff asserts that the record was insufficient because the ALJ did not order a clarification from Dr. Gordon.  The duty to develop that record, however, is not required where the record contains sufficient evidence from which the ALJ may make an informed decision.   *Ingram v. Commissioner of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).   The plaintiff cites to 20 C.F.R. § 416.919p to support her contention that the ALJ should have sought clarification; however, the duty to seek "an explanation" is triggered only where the report (1) fails to provides an "adequate basis for decisionmaking," (2) is internally inconsistent; (3) fails to mention "an important or relevant complaint;" (4) is not adequate "as compared to standards set out in the course of a medical education," or (5) is unsigned.  20 C.F.R. § 416.919p (a)(1)-(5).  Dr. Gordon's report is not deficient in any of these respects, and the ALJ's failure to seek "clarification" is, therefore, no basis for the remand or reversal of his decision.

**B.  Severity of her medical conditions**

The plaintiff further argues that the ALJ failed to properly find that her migraine headaches, asthma, and mitral valve prolapse were sufficiently severe. The medical evidence provided, and the ALJ's discussion, indicate that the ALJ properly evaluated plaintiff's medical conditions, as well as her mental conditions. He relied upon records from Dr. Joshua Miller to support his conclusion that her asthma is "mild" and that pulmonary function tests showed only "minimal disease." (Tr. at 25).  He further noted that her medical records indicated that the mitral valve prolapse had been asymptomatic and that her migraines, which she testified occurred once a month, were not of "a frequency and severity to be disabling."  (Tr. at 25).  The ALJ further relied upon plaintiff's own testimony that she managed the household, which included her two children, managed her finances, did laundry, shopped, drove, read, watched TV, attended church regularly, and took public transportation.  Accordingly, the ALJ's determination is supported by substantial evidence – primarily from the plaintiff's treating physician.  The decision was both comprehensive and consistent with the applicable SSA rulings.  The objective medical and other evidence supports the ALJ's conclusion that plaintiff's conditions did not cause disabling limitations and instead shows that she could perform some work.

**IV.     Conclusion**

Upon review of the administrative record, and considering all of Ms. Banks's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law.  A separate order will be entered.

DATED the 14th day of March, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE